UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

May 1, 2020

LETTER TO COUNSEL

    RE:    *Lonie B. v. Commissioner, Social Security Administration*
                Civil No. DLB-19-1424

Dear Counsel:

On May 15, 2019, Plaintiff Lonie B. petitioned this Court to review the Social Security Administration's ("SSA's") partially favorable final decision. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF No. 11 ("Pl.'s Mot."), ECF No. 13 ("Def.'s Mot."). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

After a previous denial, Plaintiff filed his claims for benefits on October 23, 2015, alleging a disability onset date of March 1, 2015. Administrative Transcript ("Tr.") 255. His claims were denied initially and on reconsideration. Tr. 115-18, 120-21. A hearing was held on August 9, 2018, before an Administrative Law Judge ("ALJ"). Tr. 32-62. Following the hearing, the ALJ determined that Plaintiff was not disabled through September 30, 2016, the date of last insured, and that Plaintiff became disabled on May 24, 2018. Tr. 14-25. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ made two sets of findings: before and after May 24, 2018. Plaintiff appeals the ALJ's finding that he was not disabled before May 24, 2018. *See* Pl.'s Mot. Therefore, this letter addresses only those findings.

The ALJ found that Plaintiff suffered from the severe impairments of "history of right clavicle fracture, history of right knee fracture with ligamentous injury, history of C7 transverse process fracture, posttraumatic arthritis of right ankle, and personality disorder."[1] Tr. 17. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

---

[1] The ALJ found that, beginning May 24, 2018, Plaintiff additionally suffered from the severe impairments of "1ight rotator cuff tear with supraspinatus and infraspinatus retraction and atrophy, left shoulder labral tearing and supraspinatus tear with bursitis, and left shoulder degenerative joint disease." *Id.*

>   perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could stand or walk for at least two hours in an eight-hour workday. He could occasionally operate foot controls with the right lower extremity. He could not climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. He could occasionally reach including overhead reaching with the right upper extremity. He needed to occasionally avoid exposure to extreme cold, exposure to excessive vibration, use of moving machinery, and exposure to unprotected heights. He was limited to short and simple routine instructions and tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and infrequent and gradual work place changes. He could perform work isolated from the public with occasional interaction with coworkers and supervisors.

Tr. 18-19. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work as a driver, but that he could perform other jobs existing in significant numbers in the national economy. Tr. 22-24. Therefore, the ALJ concluded that Plaintiff was not disabled before May 24, 2018. Tr. 20.

Plaintiff raises one argument on appeal: that the ALJ's RFC assessment was not supported by substantial evidence. Pl.'s Mot. 4-13. Specifically, Plaintiff argues that the ALJ failed to provide an adequate narrative analysis explaining the inclusion of the non-physical RFC limitations; that the RFC does not account for Plaintiff's moderate limitations in concentration, persistence, or pace; and that the ALJ's failure to explain or define the phrase "fast-paced production requirements" defies review.[2] *Id.* For support, Plaintiff cites to *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015), *Thomas v. Berryhill*, 916 F.3d 307, 311-312, (4th Cir. 2019), and *Perry v. Berryhill*, 765 Fed. Appx. 869, 872 (4th Cir. 2019). I agree that the ALJ's RFC assessment was inadequate under Fourth Circuit precedent and that remand is warranted. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits before May 28, 2018 is correct.

In *Mascio*, the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of Plaintiff's "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. The ability to concentrate, persist, or maintain pace is one of four broad functional areas that an ALJ is required to

---

[2] Plaintiff also argues that the ALJ failed to explain how he was able to stay on task up to 90 percent of the workday. Pl.'s Mot. 11. However, the ALJ did not include such a limitation in this case. It is unclear whether the argument was included in error or whether Plaintiff is arguing that the ALJ should have found that he was unable to stay on task due to his moderate limitations in concentration, persistence, or pace. In any event, this letter explains my finding that the ALJ's RFC assessment did not adequately account for Plaintiff's moderate limitations in concentration, persistence, or pace under Fourth Circuit precedent.

consider when evaluating a claimant's mental impairments.[3] 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b); *see* 20 C.F.R. 404.1520a (explaining the "special technique" for evaluating the severity of a claimant's mental impairments). The ALJ assigns a rating based on the extent to which the claimant's impairment "interferes with [his] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(b), (c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.* The Court recently reiterated that *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (finding that the ALJ adequately explained the RFC's mental limitations where the RFC did not include a specific limitation addressing the plaintiff's moderate limitation in concentration, persistence, or pace).

At step three in the instant case, the ALJ found that Plaintiff had moderate limitations maintaining concentration, persistence, or pace. Tr. 18. The ALJ's analysis stated:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation before the established onset date. The claimant has given conflicting reports regarding his ability to focus, at times reporting deficits while other times he reported adequate concentration.

*Id.* (internal citations omitted). That brief analysis contains no discussion of Plaintiff's ability to sustain work over a typical workday.

After making a finding that Plaintiff was moderately limited in all of the functional areas, except for the ability to adapt or manage oneself in which he was found only mildly limited, the ALJ restricted Plaintiff "to short and simple routine instructions and tasks performed in a work

---

[3] The other three areas are: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; and (3) the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b) (the "paragraph B" criteria).

environment free of fast-paced production requirements involving only simple work related decisions and infrequent and gradual work place changes. He could perform work isolated from the public with occasional interaction with coworkers and supervisors." Tr. 19. The ALJ did not explain the inclusions of each limitation, though it is evident that the latter half corresponds to the ALJ's finding that Plaintiff was moderately limited in the area of social functioning. There is not a corresponding limitation for the ALJ's finding that Plaintiff was moderately limited in his ability to concentrate or maintain pace.

The ALJ's discussions at both step three and in the RFC assessment provided no specific analysis regarding his reasons for finding that Plaintiff's moderate limitation in concentration, persistence, or pace is related to the complexity or the routine nature of the tasks he is asked to perform. In the RFC section, the ALJ's discussion of Plaintiff's mental impairments focused on his "uncooperative and verbally aggressive behavior." Tr. 20-21. The ALJ noted that "there was minimal evidence to support any substantial deviation from the findings of the prior [ALJ] except to add additional mental health restrictions." *Id.* The ALJ explained that the mental health restrictions were added in response to the "new evidence of a pattern of uncooperative behavior coupled with a new diagnosis of personality disorder." *Id.* Regarding the opinion evidence, the ALJ gave "partial weight" to the opinion of the intellectual function consultative examiner because "uncooperative and verbally aggressive behavior affected the exam validity." Tr. 21. The ALJ noted that the State agency psychological consultant's opinion was "consistent with the medical evidence," but gave it "no weight" because the record did not include the consultant's credentials. Tr. 21. The State agency psychological consultant opined that Plaintiff was "moderately limited" in his ability to "carry out very short and simple instructions," "maintain attention and concentration for extended periods," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 106; *see also* Tr. 102 ("The claimant's symptoms and impairments would not singly, or in combination prevent the claimant from completing work-like activities. However, concentration, persistence and pace, social ability and adaptation are somewhat impacted and would cause moderate limitations in basic work-like duties.").

The Commissioner argues that there is no *Mascio* problem here because "there is no guesswork required by this Court." Def.'s Mot 7. ("The ALJ clearly discussed the evidence in the record, including [Plaintiff's] own allegations, treatment history, and all of the medical source opinions in the record, as well as the inconsistencies therein."). However, the ALJ offered no explanation as to why Plaintiff's issues with concentration and persistence did not affect his ability to sustain work over an eight-hour workday. As the Commissioner explains, "[t]he [*Mascio*] court found that absent an explanation of the basis of the ALJ's conclusions, the Court is 'left to guess' at how the ALJ arrived at them." Def.'s Mot. 6 (quoting *Mascio*, 780 F.3d at 637). In the absence of explanation, I am unable to ascertain whether the ALJ's finding that Plaintiff had moderate limitations in the area of concentration, persistence, or pace is supported by substantial evidence or if the RFC assessment would permit a person with Plaintiff's limitations to sustain a competitive pace of work, with only normal breaks.

Plaintiff further challenges the limitation to a "work environment free of fast-paced production requirements." Pl.'s Mot. 8. In *Thomas*, the Fourth Circuit explained that the ALJ's

failure to define "production rate or demand pace" frustrated appellate review. 916 F.3d at 312; *see also Perry*, 765 F. App'x at 872 (remanding for ALJ's failure to define "non-production oriented work setting"). Here, the RFC – and accompanying hypothetical to the VE – included the phrase "fast-paced production requirements," Tr. 19, 56, without further definition or explanation. The term is similar to the terms "production rate" and "demand pace" that the Fourth Circuit found frustrated appellate review in *Thomas*. Therefore, remand is warranted to allow the ALJ to explain what a "work environment free of fast-paced production requirements" means in the context of Plaintiff's claim. Without an explanation or definition of that term, I cannot conduct a substantial evidence review.

The Commissioner attempts to distinguish this case from *Thomas* by framing Plaintiff's argument as "whether the VE understood the restrictions as presented by the ALJ at the administrative hearing," and not "whether the inclusion of the restrictions in the RFC determinations was supported by substantial evidence." Def.'s Mot. 9. The Commissioner contends that the *Thomas* court was concerned with the latter. *Id*. Plaintiff presents the argument here as an issue with the RFC, and not whether the VE understood the hypothetical. *See* Pl.'s Mot. 8. In any event, that is a distinction without a difference because the ALJ used the same term in the hypothetical and in the RFC discussion. *See Ursula G.*, Civil No. SAG-18-1841, 2019 WL 2233978, at *2 (May 23, 2019) ("Plaintiff presents the argument as a flaw in the hypothetical presented to the VE instead of a flaw in the RFC assessment, although the deficient RFC assessment would also infect the hypothetical based on that assessment."). Moreover, even if "the VE's testimony does not evince any confusion about the terms of the hypothetical, the Court has an independent duty to determine if the ALJ supported her findings with substantial evidence." *Geneva W. v. Comm'r, Soc. Sec. Admin*, Civil No. SAG-18-1812, WL 3254533, at *3 (D. Md. July 19, 2019) (citing 42 U.S.C. § 405(g)). In light of *Thomas*, this Court cannot determine whether the ALJ's findings were supported by substantial evidence without an explanation of the term "work environment free of fast-paced production requirements." *See id*.

The Commissioner further argues that the ALJ's limitations were not ambiguous and the Fourth Circuit has affirmed cases with similar limitations. Def.'s Mot. 10 (citing *Sizemore v. Berryhill*, 878 F.3d 72, 79 (4th Cir. 2017); *Michaels v. Berryhill*, 697 F. App'x 223 (4th Cir. 2017) (unpublished); *Martinez v. Saul*, 2019 WL 4130955 (4th Cir. Aug. 30, 2019)). The three cases on which the Commissioner relies are distinguishable from this case.

In *Sizemore*, the Fourth Circuit affirmed an ALJ's denial of benefits in which the ALJ included an RFC limitation to "work only in [a] low stress [setting] defined as non-production jobs [without any] fast-paced work [and] with no public contact." 878 F.3d at 79 (alterations in original). The Fourth Circuit later explained that the additional "descriptors" in *Sizemore* "helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations." *Perry v. Berryhill*, 765 Fed. App'x 869, 872 n.1 (4th Cir. Mar. 8, 2019) (unpublished) (remanding for ALJ's failure to define "non-production oriented work setting"). Here, the RFC did not contain the "descriptors" present in *Sizemore*. Rather, the RFC limitation to "short and simple routine instructions and tasks performed in a work environment free of fast-paced production requirements," Tr. 19, is similar to the RFC limitation in *Thomas* where the claimant was limited to the ability to "follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace," 916 F.3d at 310.

The unpublished opinion in *Michaels v. Berryhill*, 697 F. App'x 223 (4th Cir. 2017), also is distinguishable. *Michaels* was a one-paragraph decision affirming the district court's judgment and did not contain any discussion of the phrase "nonproduction pace rates." Lastly, the ALJ in *Martinez v. Saul*, 2019 WL 4130955 (4th Cir. Aug. 30, 2019) included a parenthetical explanation for the RFC limitation: "not at a production-rate pace (such as an assembly line)." No. 3:17-cv-1862018, WL 709971, at *2 (W.D.N.C. Feb. 5, 2018). The ALJ here did not provide such an explanation.

Finally, the Commissioner argues that if the ALJ committed error, the error was harmless and Plaintiff has not identified any resulting prejudice requiring remand. Def.'s Mot. 7-8. I disagree. Pursuant to the Fourth Circuit's decision in *Thomas*, 916 F.3d at 312, this Court cannot determine whether the ALJ's findings were supported by substantial evidence without an explanation of the term "fast-paced production requirements." If the relevant RFC terms are "not common enough for [the court] to know what they mean without elaboration," *id.*, the Court is unable to decide whether the error in failing to explain the terms was harmless. The Court cannot decisively say that, had the ALJ defined or explained the term "fast-paced production requirements," the VE would have identified the same, or any, positions that the hypothetical person could perform. *See Patterson v. Comm'r, Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017) ("Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error.") (citing *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). Therefore, remand is warranted to allow the ALJ to explain the RFC assessment and clarify the hypothetical to the VE. Without a clarification or explanation, the Court is unable to conduct a substantial evidence review.

For these reasons, Plaintiff's Motion for Summary Judgment, ECF No. 11 is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 13, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge